# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 9, 2023        Decided March 5, 2024

No. 21-3057

UNITED STATES OF AMERICA,
APPELLEE

v.

CLARK CALLOWAY, JR.,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cr-00089-1)

———

*Rosanna M. Taormina*, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.,* Assistant Federal Public Defender, entered an appearance.

*Katherine M. Kelly*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Chrisellen R. Kolb* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: MILLETT and WALKER, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*:

## I.     Introduction

Clark Calloway pleaded guilty to several firearms offenses in connection with his acquisition of a fully automatic AK-47 from an FBI confidential source. At sentencing, the district court departed upward after calculating his total offense level under the U.S. Sentencing Guidelines, finding Calloway had seriously risked death or injury to others.

The appellant challenges the district court's departure, arguing that the inoperability of the gun he received made significant endangerment of the public impossible and that the departure was duplicative of a separate sentencing enhancement the court applied. We disagree on both points and affirm the judgment of the district court.

## II.     Background

Appellant Clark Calloway is a former U.S. Marine who, following his discharge, was convicted of felony aggravated assault and of misdemeanor assault involving domestic violence. In about 2014, Calloway began posting anti-white and anti-police messages on Facebook. Calloway's posts tended to be violent and extreme; some of them expressed strong support for the Islamic State (ISIS) terror group.

The Federal Bureau of Investigation began investigating Calloway in 2016. It discovered he had "friended" several hundred suspected ISIS fighters and sympathizers and had joined many Facebook groups associated with ISIS. In some posts Calloway advocated jihad and the establishment of an Islamic

caliphate, as declared by ISIS. Calloway's posts pledged support to ISIS and its leader, urged others to engage in mass violence, advocated violence against police officers, and spoke of revolution against whites.

In early 2017, an FBI confidential source contacted Calloway and said he could procure guns for him. Calloway expressed interest in obtaining an AK-47. After some discussion, Calloway agreed to buy a fully automatic AK-47 from the confidential source for $250. Calloway then made further violent Facebook posts, such as:

- "Warning: war is imminent! I have prepared all my life for this! Most of you could never even fathom the preparation entailed for this precaution."

- "When this war comes, I'm going on a killing/cannibal spree!"

- "150 push-ups! 50 pull-ups! Ak in [sic] route! Machete on deck! I'm slaughtering anybody that ain't Muslim in these last days."

- "I'm ready to slaughter these cave dwellers."

- "Ak-47! Remember this post."

- "Somebody should shoot that cracker cop that killed the young Black boy in Texas. These crackers kill a Melanininated [sic] man every week. It's time that we start killing them."

Calloway paid the confidential source for the gun in late April 2017. The FBI gave the source a fully automatic AK-47 that it had made inoperable. On May 4, the source told Calloway to come pick up the weapon at the source's apartment

in the District.  After Calloway arrived and took possession of the gun, FBI agents entered the apartment and arrested him.  In its subsequent search of Calloway's apartment, the FBI found a machete.

After unsuccessfully moving to dismiss his charges, Calloway agreed to plead guilty to:  (1) one count of unlawful possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1); (2) one count of illegal possession of a machine gun, in violation of § 922(o); and (3) one count of interstate transportation of a firearm with intent to commit a felony, in violation of § 924(b).  As part of the last charge, Calloway admitted he had acquired the AK-47 with the intent to commit assault with a dangerous weapon, in violation of D.C. Code § 22-402.

At sentencing, the Government asked the district court to apply the following adjustments when calculating Calloway's total offense level under the U.S. Sentencing Guidelines:

1.) A four-level increase in the base offense level under U.S.S.G. § 2K2.1(b)(6)(B) for having "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense";

2.) A two-level upward departure in the total offense level under § 5K2.9 for having "committed the offense in order to facilitate or conceal the commission of another offense";

3.) A two-level upward departure under § 5K2.14 because "national security, public health, or safety was significantly endangered"; and

4.) A one-level upward departure under § 5K2.6 because "a weapon or dangerous instrumentality was used or possessed in the commission of the offense."

The district court granted in part and denied in part the Government's requests. It agreed to apply the § 2K2.1(b)(6)(B) "connection with another felony" enhancement. Of the three requested upward departures, however, the court agreed to apply only the § 5K2.14 departure for "significantly endanger[ing]" public safety. The district court found that Calloway had been "dangerous at the time of [his] offense" and therefore warranted the departure:

> I find that this two-level upward departure is appropriate in this case. . . . Calloway intended to use a fully automatic AK-47 with a high-capacity magazine to commit assault with a dangerous weapon. He also possessed a machete that he indicated could play a role in this attack. The dangerous nature of the defendant at the time of the offense — being armed with multiple weapons that he intended to use in carrying out an attack — created a serious risk that multiple individuals could have been killed or injured. I find that this situation presented a serious threat to public safety that takes this case outside of the Guidelines' heartland.

> The Guidelines do not adequately account for this risk. While the 2K2.1(b)(6) enhancement accounts for Calloway's intent to commit a *felony*, it does not consider the serious risk stemming from the particular felony Calloway intended to commit in this case. Thus, I find that two additional points are warranted to reflect

the serious danger to public safety posed by Calloway.

Calloway argues that this departure may apply only where the "conduct endangered public welfare *at the time of the act*." True enough: the Guideline is written in the past tense — *i.e.*, "was significantly endangered" — suggesting that the Court should not consider the "future dangerousness of the defendant." But I find that Calloway was dangerous at the time of the offense, when he was armed and had the intent to commit assault with a dangerous weapon.

(Citations and footnote omitted).

After applying the four-level enhancement under § 2K2.1(b)(6)(B) and the two-level upward departure under § 5K2.14, the district court set Calloway's Guidelines sentencing range at from 70 to 87 months.[*] It sentenced him to 84 months in prison, to be followed by three years of supervised release.

Calloway challenges only the district court's decision to depart upward under § 5K2.14. Calloway's Guidelines sentencing range prior to any departure was from 57 to 71 months.

---

[*] U.S.S.G. § 5K2.14 identifies endangering public safety as an "aggravating circumstance" "the Commission may have not adequately taken into consideration in determining the applicable guideline range[.]" U.S.S.G. § 5K2.0(a)(1)-(2). Accordingly, contrary to the district court's characterization, the resulting sentence was no longer a "Guidelines" sentence.

### III. Standard of Review

When reviewing a sentence imposed by the district court, "we review purely legal questions *de novo*, review factual findings for clear error, and give due deference to the district court's application of the Guidelines to the facts." *United States v. Flores*, 912 F.3d 613, 618 (D.C. Cir. 2019) (cleaned up).

### IV. Discussion

We affirm the district court's decision to depart upward under U.S.S.G. § 5K2.14. When a court of appeals reviews a sentence, it must "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). That standard requires us to affirm the district court's findings "unless we are 'left with the definite and firm conviction that a mistake has been made.'" *United States v. Brockenborrugh*, 575 F.3d 726, 738 (D.C. Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In this case, the district court departed upward under U.S.S.G. § 5K2.14 based upon its finding of fact that "Calloway was dangerous at the time of the offense, when he was armed and had the intent to commit assault with a dangerous weapon." The court also found that "the dangerous nature of the defendant at the time of the offense . . . created a serious risk that multiple individuals could have been killed or injured."

There is no clear error in these findings. The record demonstrates that in the weeks leading up to his purchase of the AK-47, Calloway put many posts on Facebook speaking of preparing for and imminently carrying out violent attacks. The messages Calloway exchanged with the FBI's confidential source also spoke of carrying out violent acts once he had the

gun. Some of his posts, including several made the day before he received the AK-47, spoke of killing police officers and others. Calloway also had a machete, which he mentioned in connection with the AK-47 and his intention of "slaughtering" non-Muslims, and he had a demonstrated history of violent assaults. Viewing these facts together with the other evidence in the record, we are not left with the "definite and firm conviction that a mistake has been committed" needed to conclude the district court's findings of fact were clearly erroneous. *Brockenborrugh*, 575 F.3d at 738 (quoting *U.S. Gypsum Co.*, 333 U.S. at 395).

Calloway argues the inoperable nature of the AK-47 made it factually impossible for him significantly to have endangered the public, therefore rendering U.S.S.G. § 5K2.14 inapplicable to him. This argument, however, rests upon the flawed premise that the district court based its factual findings solely upon Calloway's possession of the AK-47. The district court's decision directly refutes this premise. In explaining its findings, the court stated that Calloway "also possessed a machete that he indicated could play a role in [his] attack." It also mentioned the threatening statements Calloway repeatedly made, as well as his admitted intent to use the AK-47 to commit a murderous attack. Each of these justifications finds ample support in the record. In light of the district court's factual findings regarding significant endangerment of the public and the supporting evidence in the record, we reject Calloway's argument that the court erred in departing upward under U.S.S.G. § 5K2.14.

We also reject Calloway's assertion that the district court's upward departure under § 5K2.14 was duplicative of its enhancement under § 2K2.1(b)(6)(B). As the district court explained, it applied the § 2K2.1(b)(6)(B) enhancement solely because Calloway intended to use the AK-47 in connection with another felony. Meanwhile, the § 5K2.14 departure was

based solely upon the significant danger he posed to the public at the time of the offenses.  Therefore, there was no duplication in the court's decisions raising Calloway's Guidelines range.

### V.    Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*